UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | | |
|---|---|---|---|
| MICHAEL CURRIER, | ) | | |
| | ) | | |
| Petitioner, | ) | Nos. | 3:08-CR-107-PLR-HBG |
| | ) | | 3:13-CV-396-PLR |
| v. | ) | | |
| | ) | | |
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Respondent. | ) | | |

## **MEMORANDUM AND ORDER**

Petitioner, Michael Currier ("Currier"), was convicted in this case of conspiracy to distribute and possession with intent to distribute 5 kilograms or more of cocaine [Doc. 437].[1] The Court sentenced Currier to 292 months in prison [Doc. 452]. The Court of Appeals for the Sixth Circuit affirmed the conviction and sentence, and the Supreme Court denied certiorari. *United States v. Currier*, 473 F. App'x 469 (6th Cir.), cert denied, 133 S. Ct. 550 (2012).

Now before the Court is Petitioner's § 2255 Motion, which alleges several claims of ineffective assistance of counsel, as well as other claims directed at the Court's rulings [Doc. 513]. The Government responded in opposition [Doc. 532]. The Petitioner filed a reply [Doc. 543].

## **STANDARD OF REVIEW**

The relief authorized by 28 U.S.C. § 2255 "does not encompass all claimed errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). Rather, to obtain relief under § 2255, a petitioner must establish "(1) an error of constitutional magnitude;

---

[1] All citations to the record are found on the docket of case no. 3:08-CR-107-PLR-HBG.

(2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire processing invalid." *Short v. United States,* 471 F.3d 686, 691 (6th Cir. 2006) (internal quotations omitted). In other words, petitioner cannot prevail unless he shows a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998). Under this standard, a petitioner "must clear a significantly higher hurdle [to obtain relief] than would exist on direct appeal." *Id.* (quoting *United States v. Frady*, 456 U.S. 152, 166 (1982)).

Moreover, a petitioner alleging ineffective assistance of counsel must satisfy a two-part test. *Strickland v. Washington*, 466 U.S. 668 687 (1987), *see also*, *Huff v. United States*, 734 F.3d 600, 606 (6th Cir. 2013). First, he must establish, by identifying specific acts or omissions, that counsel's performance was deficient and that counsel did not provide "reasonable effective assistance," *Id.*, as measured by "prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005). Counsel is presumed to have provided effective assistance, and petitioner bears the burden of showing otherwise. *Mason v. Mitchell*, 320 F.3d 604, 616-17 (6th Cir. 2003); *see also Strickland*, 466 U.S. at 689 (a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that. . . the challenged action might be considered sound trial strategy") (internal citation omitted).

Second, petitioner must demonstrate "a reasonable probability that, but for [counsel's acts or omissions], the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting

2

Case 3:08-cr-00107-PLR-HBG   Document 609   Filed 05/03/16   Page 2 of 9   PageID #: 4206

aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691; *see also Smith v. Robbins*, 528 U.S. 259, 285-86 (2000).

The Court agrees with the United States that Currier alleges three categories of claims: (1) claims previously litigated on appeal; (2) claims which could have been litigated on appeal but were not; and (3) claims of ineffective assistance of counsel. The Court will address each category of claims in turn.

### 1. Claims Resolved By The Court of Appeals

Claims raised on appeal may not be relitigated on collateral review, absent "highly exceptional circumstances." *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996); *see also Hurst v. United States*, No. 88-5924, 1989 WL 27994, at *1 (6th Cir. Mar. 28, 1989) (concluding that "Hurst cannot relitigate [an] issue in this § 2255 proceeding because the issue was decided adversely to him on direct appeal and he has not alleged an intervening change in the law since his direct appeal").

Currier disputes the drug quantity attributed to him at sentencing and the Guidelines enhancements used to calculate his sentence. Currier argues that his Guidelines determinations were based upon the testimony of "proven liars". Petitioner, however, raised identical claims on direct appeal, and the Sixth Circuit rejected his arguments. *Currier*, 473 F. App'x at 472-74. Claims that do not involve constitutional or jurisdictional errors are not cognizable on collateral review. *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996).

Currier also argues that the district court's drug quantity determination for purposes of sentencing violated *Alleyne v. United States*, 133 S. Ct. 2151 (2013), because it exceeded the drug quantity found by the jury as part of its special verdict. *Alleyne*, however, does not apply

3

retroactively to cases, like Currier's, that are already final. *Teague v. Lane* 489 U.S. 288 (1989). *Alleyne* provides no ground for relief in this case.

Currier's next issue involves the admissibility of a jailhouse recording, even though the Court of Appeals ruled on the matter. *See Currier*, 473 F. App'x at 474-75. Currier claims that the Court violated his constitutional rights because a jailhouse recording was not introduced in full. After reviewing the record, however, the Court can identify no constitutional provision requiring exclusion of the recording on that basis. If a "misleading impression [is] created by the introduction of part of a writing or conversation," the appropriate remedy is the introduction of additional parts as needed "to put the admitted portions in proper context." *United States v. Holden*, 557 F.3d 698, 705 (6th Cir. 2009).

The Court finds that the Government did not introduce any portions of the recording that would be misleading if considered without the remainder of the recording. Petitioner has not demonstrated that the portions not played for the jury would have been necessary to avoid misleading the jury. Currier alleges only that a portion of the recording not played for the jury included "unkind" comments by Currier about Government witness Andrew Chapman's wife. There simply was no error by the Court, and this claim is without merit.

## 2. Claims Which Could Have Been Raised On Direct Appeal, But Were Not

Petitioner alleges several instances of district court error and purported prosecutorial misconduct: that there was "spillover" evidence about his co-defendant which allegedly prejudiced Petitioner; that he was vindictively prosecuted because of refusal to cooperate with law enforcement against his co-defendant; that a flawed jury instruction caused him to be convicted of a drug quantity greater than the physical evidence presented by the government at trial; that a prosecutor argued for improper inferences from the evidence during closing

4

argument; that the government violated *Brady* and *Jencks* by not calling Thomas Capps as a witness after an agent testified that Capps participated in several controlled buys; that the government mischaracterized Currier's statements to investigators as "confessions"; that the government stated that Currier's wife, who had rented cars for Petitioner, personally drove Currier and a quantity of cocaine to Tennessee from Texas; that "every single witness against [Petitioner] was motivated by a separate [sic] and distinct rationale to cooperate with the government") and several acts of alleged prosecutorial vindictiveness. The Court finds that all of these claims could have been raised on direct appeal, but were not. Accordingly, they are procedurally defaulted and unreviewable in this § 2255 proceeding. *Bousley v. United States*, 523 U.S. 614, 621 (1998).

To obtain review of a procedurally defaulted claim, a Petitioner must show that (1) he had good cause for not raising the claim earlier and would suffer "actual prejudice" if it were not reviewed, or (2) he is actually innocent. *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003). The "hurdle" a Petitioner faces to excuse procedural default is "intentionally high . . . , for respect for the finality of judgments demands that collateral attack generally not be allowed to do service for an appeal." *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000). Petitioner has established nothing which would excuse the procedural default. Therefore, this claim for relief is without merit.

### 3. Ineffective Assistance of Counsel

Currier alleges five categories of ineffectiveness by counsel: (1) not negotiating a favorable non-cooperation plea deal; (2) misstating his wife's occupation during opening statement; (3) failing to adequately prepare for trial, investigate, obtain, and "effectively leverage" potential defense witnesses, or "absolutely discredit" Jackie Miller; (4) failing to call Thomas Capps as a witness; and (5) not disclosing a friendship with government witness Andrew Chapman, which allegedly kept

5

counsel from cross-examining that witness "as much as he could have." The Court will address these claims in turn.

### A. Plea Negotiations

Currier complains that his attorney did not negotiate a plea agreement that would not require cooperation with law enforcement agents. Yet, Currier also insists his counsel "knew, or should have known, that THIS case was going to trial" [Doc. 518 at 20]. A criminal defendant has "no constitutional right to plea bargain," *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977). The United States is not required to agree to a defendant's request for a particular plea agreement. Moreover, the Court finds nothing in the record which indicates that counsel's alleged inaction with regard to plea negotiations actually resulted in prejudice to Currier. This claim for relief is without merit.

### B. Defense Counsel's Opening Statement

Currier claims that his attorney made false statements about his wife and her employment during the opening statement to the jury. However, Currier has provided no factual support for his claim by identifying the allegedly false statement(s) made by counsel. Accordingly, the Court cannot evaluate this claim. *O'Malley v. United States*, 285 F.2d 733 735 (6th Cir. 1961) ("Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing," much less relief); *Short v. United States*, 504 F.2d 63, 65 (6th Cir. 1974) (explaining that if "claims are stated in the form of conclusions without any allegations of facts in support thereof," a 2255 motion is "legally insufficient to sustain reivew").

### C.     Trial Preparation And Investigation Of Potential Witnesses

Petitioner alleges that his attorney "waited until the last minute to prepare for trial." The Court finds, however, that defense counsel's preparation was adequate. The Court finds that counsel had familiarized himself with the evidence against Petitioner and that counsel adequately cross-examined the prosecution's witnesses. Moreover, Petitioner has not specified what his attorney should have done that he did not do.

6

Petitioner also complains that his attorney failed to "effectively leverage Jackie Miller, Mandi Carrier, and Brandi Bacon to present a defense." At the same time, however, Petitioner claims that counsel was ineffective for not "absolutely discredit[ing] Jackie." In addition to its inconsistency, this claim is not specific enough to provide any basis for relief.

Petitioner seems to be arguing that his attorney should have used, as witnesses at trial, Brandi Bacon, Michelle Currier, and seven of Jackie Miller's Hooters co-workers. He says that these persons were interviewed by the FBI and that they did not provide any evidence against him. Petitioner, however, cannot establish that counsel's performance was deficient for failing to interview or call these witnesses, absent some evidence that their testimony might have altered the outcome of the trial. *United States v. Robson*, 307 F. App'x 907, 911 (6th Cir. 2009). The Court finds that Currier has made no showing of what the witnesses would have said at trial. He has not identified the substance of their expected testimony, asserting only that Bacon and Currier were "squeaky-clean . . . church girls." This claim does not provide any basis for relief.

### D. Thomas Capps

Petitioner complains that his attorney did not call Thomas Capps as a witness at trial. Petitioner essentially is arguing that his Confrontation Clause rights were violated when Capps did not testify. The Court finds that at the trial, law enforcement officers testified that a confidential informant made several controlled buys from Thomas Capps in 2003 and that, immediately prior to three such buys, Capps went to the apartment complex where Currier then lived with O'Neal [Doc. 461, Trial Tr. at 45-55]. On one of those occasions, Knoxville Police Officer Bruce Conkey saw Capps meet Petitioner in the parking lot, shake hands, and go into a stairwell together, out of sight. After Capps returned to his car a few minutes later, he sold cocaine to the confidential informant [Doc. 461, at 25-30, 35, 49-51, 55]. Officers also testified that, when interviewed in June 2003, Currier had told them that one of the individuals to whom he sold cocaine was Thomas Capps [Doc. 461, at 44-45, 58-59, 123].

The Court finds that Currier's attorney did cross-examine Detective Kris Mynatt about the transactions involving Thomas Capps. Currier's attorney elicited testimony that, in fact, no officer had observed Capps buying cocaine from Currier. *Id.*

The testimony about Capp's role in controlled buys did not include any statements by Capps that would have implicated the Confrontation Clause. The Government argues that it was a reasonable strategy for Currier's lawyer not to call Capps as a witness. The Court agrees. There certainly was a risk that Capps would testify that he purchased cocaine from Currier [*see* Doc. 518, Memorandum in Support at 57 (noting that Capps had told the police that he bought cocaine from Currier); Doc. 518-1, Petitioner's Affidavit at 4 (stating that a 302 (i.e., investigative report) prepared by the FBI indicated that Capps had said he purchased cocaine from petitioner)]. Currier has not established that his Confrontation Clause rights were violated by the absence of Thomas Capps, nor that counsel was ineffective for not calling Capps to testify. This claim is without merit.

### E. Andrew Chapman

Currier asserts that his attorney had a "long, professional, and personal re[la]tionship to Detective Andy Chapman" and that, as a result, his attorney did not cross-examine Chapman as much or as vigorously as he could have. The Court finds, however, that Currier's counsel did thoroughly cross-examine Chapman. Currier's attorney established: that Chapman only participated in the investigation for one year and thus had no basis to speculate whether a conspiracy existed as early as 2000 or whether petitioner participated in it at that point; that Chapman had obtained thirty-one separate recordings of drug transactions involving O'Neal, but had no such audio or video recordings regarding Currier; and that there was no physical evidence to corroborate whether or not Capps had purchased cocaine from Currier [Doc. 463, Trial Transcript at 72-73]. Counsel also elicited an admission from Chapman that it "appear[ed] that [government witness Stacy Harvey] might have" lied during her trial testimony, and that it would be inappropriate for the government to use witnesses who "had a poor or distorted recollection of events or otherwise were not credible" [Doc. 463]. The

Court finds that Currier's attorney also used other avenues of examination to undermine Chapman's testimony. The Court finds no bias in Chapman's favor, and Currier has identified no questions counsel should have asked of Chapman, but did not.

The Sixth Circuit has held that decisions about whether and to what extent to conduct cross-examination are necessarily strategic and are thus "effectively insulated" from claims of ineffective assistance. *Hurley v. United States*, 10 F. App'x 257, 260 (6th Cir. 2001).

Finally, Currier has not established the nature of counsel's alleged relationship with Chapman. The record shows only that counsel had previously represented other defendants who had been investigated by Chapman [Doc. 463]. This claim is without merit.

### F. Cumulative Error

Currier claims that the impact of "cumulative errors" should cause his conviction to be set aside. This claim, however, is without merit, where, as here, Petitioner has not established any actual errors to be accumulated. *See Getsy v. Mitchell*, 495 F.3d 295, 317 (6th Cir. 2007) (assuming, without deciding, that cumulative error could provide the basis for a § 2254 claim, but that no relief is warranted if "there are simply no errors to cumulate."

### CONCLUSION

The Court finds that Petitioner is not entitled to relief pursuant to 28 U.S.C. § 2255. A hearing is unnecessary in this case. A Judgment will enter **DENYING** the Motion [Doc. 513].

**SO ORDERED**.

ENTER: May 2, 2016

_____
**UNITED STATES DISTRICT JUDGE**

9