UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No. 3:08-CR-107 |
| | ) | |
| MICHAEL CURRIER | ) | |

### MEMORANDUM AND ORDER

This criminal case is before the Court on the defendant's *pro se* motion for compassionate release pursuant to 18 U.S.C. 3582(c)(1)(A)(i). [Doc. 696]. The United States has responded in opposition [docs. 698, 699] and the defendant has submitted a reply. [Doc. 701]. For the reasons that follow, the defendant's motion for compassionate release will be denied.[1]

### I. BACKGROUND

In 2011, the Honorable Thomas W. Phillips sentenced the defendant to a 292-month term of imprisonment for conspiring to distribute and possess with the intent to distribute cocaine. In 2017, the Honorable Pamela L. Reeves granted the defendant's motions for sentence reduction under Amendment 782 to the United States Sentencing Guidelines, thereby lowering the term of imprisonment to 235 months. The defendant is presently serving his sentence at FCI Ashland with a projected release date of May 12, 2027. *See* Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Apr. 1, 2022).

---

[1] The defendant also filed a motion for extension of time to allow him to submit his reply brief. [Doc. 700]. That motion for extension of time will be granted.

The defendant now moves for compassionate release due to hypertension and "Liver complications," which he argues place him at greater risk of serious illness or death from COVID-19. The defendant also discusses his rehabilitative efforts.

## II. COMPASSIONATE RELEASE

Section 3582(c)(1)(A)(i) of Title 18, United States Code, allows district courts to consider prisoner motions for sentence reduction upon a finding of "extraordinary and compelling reasons." That statute, as amended by the First Step Act of 2018, provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons ["BOP"], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

18 U.S.C. § 3582(c)(1)(A)(i). Prior to the First Step Act, a motion for compassionate release could only be brought by the BOP Director, not a defendant. *See* 18 U.S.C. § 3582(c)(1)(A) (2017). The First Step Act amended § 3582(c)(1)(A) to allow a defendant to file a motion for compassionate release after first asking the BOP to file such a motion on his behalf. *See, e.g., United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020).

The United States Sentencing Commission has promulgated a policy statement regarding compassionate release under § 3582(c), which is found at U.S.S.G. § 1B1.13 and

2

the accompanying application notes. District courts in this circuit previously turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction but are no longer to do so, at least as to compassionate release motions filed by defendants (rather than by the BOP). *See United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir. 2020) ("[H]olding" that guideline 1B1.13 "is not an 'applicable' policy statement when an imprisoned person files a motion for compassionate release."); *accord United States v. Elias*, 984 F.3d 516 (6th Cir. 2021).[2]

In *Jones*, the Sixth Circuit observed that "[d]istrict courts should [still] consider all relevant § 3553(a) factors before rendering a compassionate release decision." 980 F.3d at 1114. Subsequently, in *Elias*, the appellate court "clarified" that "district courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others." 984 F.3d at 519.

### A. Exhaustion

The defendant has previously submitted a compassionate release request to the BOP, and more than 30 days passed between the warden's receipt of that request and the filing of the instant motion. [Doc. 696]. The Court thus finds that it has authority under § 3582(c)(1)(A) to address the issue of compassionate release in this case. *See Alam*, 960 F.3d at 834.

---

[2] The parties in this case have not addressed any guideline policy statement other than § 1B1.13.

## B. Merits

As noted, in support of his motion the defendant argues that hypertension and "Liver complications" heighten his risk of severe illness or death from COVID-19. He also cites his rehabilitative efforts.

At the defendant's prison, there are currently no inmates or staff positive for COVID-19, with 344 inmates and 158 staff having recovered, and six inmate deaths. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Apr. 1, 2022). These numbers are historically significant, but outside the prison setting our nation remains in an ongoing crisis in terms of COVID diagnoses, variants, hospitalizations, and deaths. Further, the COVID-19 pandemic cannot alone justify compassionate release. *See, e.g., United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. April 22, 2020) ("[S]peculation as to whether COVID-19 will spread through Defendant's detention facility . . . , whether Defendant will contract COVID-19, and whether he will develop serious complications, does not justify the extreme remedy of compassionate release."); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]").

Additionally, at the defendant's prison 197 staff and 1,124 inmates have now been fully vaccinated. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Apr. 1, 2022). The record before the Court is silent as to whether the instant defendant has been offered the vaccine, and whether he has accepted or refused such an offer. However,

4

> BOP remains committed to making the vaccine available to all staff and inmates who wish to receive it. Both staff and inmates were afforded an opportunity to receive the vaccine when it was first available. In particular, vaccinating staff protects fellow staff, inmates at the facility, and the community. Vaccine doses are available at each location for newly-admitted and existing inmates. **Inmates have also been offered booster shots in accordance with CDC guidance.**

*Id.* (emphasis in original).

The medical record confirms that the defendant has been diagnosed with benign essential hypertension, but that condition is noted to have been "resolved" since 2010. [Doc. 699]. The medical record makes no mention of "Liver complications." [*Id.*]. The defendant's Presentence Investigation Report ("PSR") does note that his "liver quit functioning, and he developed jaundice in approximately March of 2010." [PSR, ¶ 43]. A "biopsy was negative, and the defendant had no further problems after being treated with antibiotics." [*Id.*].

The BOP rates the defendant as Care Level 1. [Doc. 698, Ex. 1]. "Care Level 1 inmates are less than 70 years of age and are generally healthy. They may have limited medical needs that can be easily managed by clinician evaluations every 6 to 12 months." *See* http://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf (last visited Apr. 1, 2022).

Chronic liver disease and "possibly" hypertension "can" increase the risk of severe illness from COVID-19. *See* People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Apr. 1, 2022). However, as cited above, the present defendant has not met his burden of showing that he in fact suffers from either of those conditions.

5

The defendant also has not shown, or even argued, that the COVID-19 vaccine is not available to him. The Sixth Circuit Court of Appeals has held that, "even recognizing the purported seriousness of his condition," a defendant's

> access to the COVID-19 vaccine substantially undermines his request for a sentence reduction. To that end, we agree with the Seventh Circuit that a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an "extraordinary and compelling reason" warranting a sentence reduction. *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) (Easterbrook, J.). After all, with access to the vaccine, an inmate largely faces the same risk from COVID-19 as those who are not incarcerated. To be sure, inmates in some respects face social distancing challenges distinct from those of the general public (although perhaps not entirely unlike students in dorm rooms, individuals in medical and assisted care facilities, and even residents of densely occupied apartment complexes). But to the extent prisons do offer some unique challenges, the vaccine now significantly reduces the risks associated with COVID-19. And at this intersection of law and science, we find wisdom in Judge Easterbrook's assessment that "for people living in close quarters, vaccines offer relief far more effective than a judicial order." *Id.*

*See United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021).

Subsequently, the Sixth Circuit issued its published ruling in *United States v. Traylor*, 16 F.4th 485 (6th Cir. 2021). In *Traylor*, the appellant sought compassionate release "due to her various health ailments (e.g., diabetes, sleep apnea, asthma, obesity, being a recent organ transplant recipient, and use of immunosuppressive therapy)." *Id.* The Sixth Circuit "[a]ccept[ed] the serious nature of Traylor's alleged medical conditions" but nonetheless held that her argument was foreclosed by *Lemons*' "holding that 'a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an "extraordinary and compelling reason" warranting a sentence reduction.'" *Id.* (citing and quoting *Lemons*).

According to the BOP, the COVID-19 vaccine is available to all its inmates, and the present defendant has not shown or even suggested otherwise. The published holdings in *Lemons* and *Traylor* bind this Court. *See, e.g., Grundy Mining Co. v. Flynn*, 353 F.3d 467, 479 (6th Cir. 2003). In light of those rulings and the evidence presented in this case, the defendant has not carried his burden of showing that his physical condition is an extraordinary and compelling basis for compassionate release.

His rehabilitative efforts do not change the result. The Court appreciates that the defendant has incurred no serious disciplinary sanctions while in BOP custody, and that he has completed various coursework. Nonetheless, in the context of 18 U.S.C. § 3582(c)(1)(A) "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for compassionate release. 28 U.S.C. § 994(t).

Additionally, compassionate release in this case would be inconsistent with the 18 U.S.C. § 3553(a) factors. Pursuant to § 3553(a),

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider –
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

7

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . .

. . .

(5) any pertinent policy statement—

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

In this case, the defendant was held accountable for between 15 and 50 kilograms of cocaine, a staggering amount. [PSR, ¶ 14]. He participated in the instant conspiracy for several years, purchasing kilogram quantities. [*Id.*, ¶ 15]. At least four trial witness testified that the defendant possessed firearms. [*Id.*, ¶ 16]. He recruited and directed others,

8

"exercise[ing] a high degree of decision making authority in the conspiracy, as far as how much to charge for the cocaine, who to sell it to, and where to consummate the sale." [*Id.*, ¶ 17]. He and codefendant Ralph O'Neal "were the only ones who profited extensively from the conspiracy." [*Id.*]. The defendant "had large sums of cash, numerous vehicles, and could travel on a moments [sic] notice." [*Id.*]. It appears that the defendant acted solely for profit, as he reports a very minimal substance abuse history. [*Id.*, ¶ 46]. In sum, the defendant's crime was a serious one, calling for equally serious punishment.

Although the defendant has only one other adult conviction, that crime was also serious. According to the affidavit of complaint, the defendant drove up beside a vehicle containing his ex-girlfriend and another person and then shot at them. [*Id.*, ¶ 34].

The Court appreciates the defendant's positive BOP disciplinary record. That conduct is consistent with his apparent compliance with pretrial bond conditions in this Court.

Nonetheless, more than five years of actual time remain on the defendant's sentence. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020) (Several § 3553(a) factors "permit the court to consider the amount of time served in determining whether a sentence modification is appropriate."). As detailed above, the defendant's conduct in this case was very serious. Compassionate release on the facts of this case would not reflect that seriousness, would not promote respect for the law or provide just punishment, and would not afford adequate deterrence or protect the public from future crimes.

## III. CONCLUSION

As provided herein, the defendant's motion for extension of time [doc. 700] is **GRANTED** and his motion for compassionate release [doc. 696] is **DENIED**.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge